In the Matter of Ess Pee Bee Realty Corp., Petitioner, *v.* Hortense W. Gabel, as City Rent and Rehabilitation Administrator, Respondent.

Supreme Court, Special Term, New York County, January 13, 1967.

*McLaughlin, Fougner & Messing (Robert S. Fougner* of counsel), for petitioner. *Maurice A. Reichman (Florence R. Zimmerman* of counsel), for respondent.

Mitchell D. Schweitzer, J.  This is an article 78 proceeding by a landlord against a final order of the City Rent Administrator issued June 28, 1966.

The issue in this proceeding is whether the District Rent Director should have adjusted the subject maximum rents to reflect increases granted pursuant to section 33.5 of the Rent, Eviction and Rehabilitation Regulations upon the expiration of various leases.

On August 4, 1961, landlord applied for building-wide increases in the maximum rents, pursuant to subdivision 5 of section 33

of the then applicable State Rent and Eviction Regulations. On May 1, 1962, the administration of rent control matters came under the jurisdiction of the City Rent Administration; and on December 19, 1962, the District Rent Director issued orders denying the landlord's application, solely because he refused to adopt the purchase price as the valuation base for the calculation of the 6% return. After due protest and denial thereof by respondent, an article 78 proceeding was instituted and Special Term affirmed respondent's determination. On or about December 15, 1964, the Appellate Division (22 A D 2d 207) reversed Special Term and directed the adoption of the purchase price. The Court of Appeals (16 N Y 2d 524) affirmed on April 22, 1965. Thereafter the Administrator issued an order and opinion granting landlord's protest to the original District Rent Director's order, granted the landlord increases pursuant to section 33.5 and directed the District Rent Director to issue supplemental orders to effectuate the Administration order.

On March 10, 1966, the District Rent Director issued the supplemental orders, which are herein protested and which did not provide for section 33.5 increases as to the subject accommodations because leases for said accommodations executed after January 1, 1963, did not contain clauses permitting such increases as required by Administrator's Interpretation No. 3.

Landlord contends that Administrator's Interpretation No. 3 should not have been invoked herein.

Administrator's Interpretation No. 3 provides in pertinent part that, where a lease has been executed subsequent to January 1, 1963, and an application for increases pursuant to section 33.5 was pending at the time of execution, the maximum rent may be increased to reflect adjustments warranted under section 33.5, effective upon the expiration of the lease if the lease contains a clause reciting that the tenant was advised of said application and consented to the increase. It is undisputed that the subject leases do not contain such clauses, and they were executed subsequent to January 1, 1963. The Administrator found that Administrator's Interpretation No. 3 applies to the instant proceeding.

On August 1, 1962, Administrator's Interpretation No. 3 was issued requiring that such post-January 1, 1963 leases show that at the time tenant consented to the voluntary increase in his maximum rent, he was aware of the fact that there was also an application pending to impose an involuntary increase in the maximum rent, to attach on expiration of the two-year lease, and with this knowledge he '' consented '' to the '' voluntary '' rent increase.

It is obvious that landlord could have obtained the rent increases simply by providing for full disclosure in the leases, as required by Administrator's Interpretation No. 3. It is simply elemental notice and consent which insures knowledge to the tenant of the necessary facts when he gives his voluntary consent to an increase in his maximum rent. Since, normally, only the landlord, and not the tenant, knows the facts of such a pre-existing rent return proceeding and its import, only the landlord knows whether or not he intends to accept the voluntary increase in the maximum rent in lieu of the subsequent involuntary increase.

As the date of issuance of the District Rent Director's erroneous order of denial (being corrected in the subject order under review, effective as of December 19, 1962), the challenged published Administrator's Interpretation No. 3 was already in effect, having been issued on August 1, 1962. Thus, beginning from August 1962 landlords were charged with notice that when a tenant consents to a voluntary rent increase by lease, up to 15%, and there is also a pending pre-existing proceeding for a 6% net return up to 15%, the lease must contain the saving consent clause to apprise the tenant of all the facts. The amendment to Administrator's Interpretation No. 3 on January 1, 1963, did not revoke it; it simply provided that the Administrator would excuse leases made prior to January 1, 1963, which had failed to include the consent clause. It is well settled that there is no vested right against change in the rent law prior to issuance of the local order (*I. Y. F. Y. Co.* v. *City Rent and Rehabilitation Administration*, 11 N Y 2d 480).

Landlord contends that the use of the word "application" in Administrator's Interpretation No. 3 perforce means that a landlord need only apprise a tenant signing a lease of a pre-existing net return proceeding only while the proceeding is pending at the local level. Such a meaning cannot be so limited in the circumstances herein. It continued to be a pending "application" for a rent raise when landlord continued to litigate the denial thereof in the courts. Accordingly, the application is denied and the petition is dismissed.